In the Matter of the Board of Education of Union Free School District No. 1 of the Towns of Bethlehem, Coeymans and New Scotland, Albany County, et al., Respondents, against Lewis A. Wilson, as Commissioner of Education of the State of New York, Appellant.

Third Department, November 23, 1955.

*Charles A. Brind, Jr., John P. Jehu, Elizabeth M. Eastman* and *George B. Farrington* for appellant.

*Andrew Wright Lent* for respondents.

ZELLER, J. The principal issue on this appeal is whether the Commissioner of Education has the power to lay out a central school district which includes an existing central school district.

In March, 1947, several common school districts were combined into Union Free School District No. 1 of the Towns of Bethlehem, Coeymans and New Scotland, Albany County. In May, 1949, Central School District No. 1 of the Towns of Coeymans and New Scotland, Albany County, and New Baltimore, Greene County was created by combining other school districts. In May, 1955, the Commissioner of Education, acting under section 1801 of the Education Law, laid out proposed Central School District No. 2 of the Towns of Coeymans, New Scotland, and Bethlehem, Albany County, and New Baltimore, Greene County, which consisted of all the territory contained in Union Free School District No. 1 and all the territory contained in Central School District No. 1.

Subdivisions 1 and 2 of section 1801 of the Education Law read, in part: " 1. The commissioner of education is hereby authorized and empowered to lay out central school districts for the establishment of central schools to give instruction in elementary or elementary and high school subjects and to fix, determine and define the boundaries of said districts as hereinafter provided. 2. The commissioner is authorized and empowered to make and enter in his office orders laying out territory in new central school districts or annexing to existing central school districts territory not contained within a city school district in a city having a population of more than ten thousand inhabitants ".

In this article 78 proceeding, Special Term declared void the action of the commissioner in laying out Central School District No. 2, holding that the statute gave the commissioner power to annex territory to an existing central school district but that it did not invest him with authority to create a central school district by combining an already existing central school district and another school district. The procedure for effecting annexation differs from centralization procedure. For instance, after the commissioner has laid out a proposed central school district and has been properly petitioned, all the voters of the proposed new district ballot at one meeting to determine whether the territory shall be organized as a central school district and a majority of all the voters controls. (Education Law, § 1802, subd. 1; § 1803, subds. 1, 2.) But where the commissioner orders annexation of territory to an existing central school district, a referendum may be requested and held in the territory to be annexed and a separate referendum requested and held in the existing central school district. The commissioner's order is ineffective if either referendum does not result in approval of the order. (Education Law, § 1802, subd. 2; § 1803, subds. 3, 4, 9.)

The meaning of subdivision 2 of section 1801 (quoted above) may be better understood by tracing its history. Its forerunner, section 180, as added to the Education Law by chapter 55 of the Laws of 1914, reads: "The commissioner of education is hereby authorized and empowered to lay out in this state in any territory exclusive of a city school districts conveniently located for the attendance of scholars and of suitable size for the establishment of central schools to give instruction usually given in the common schools and in high schools, including instruction in agriculture." This statute conferred broad powers upon the commissioner for, upon his discretionary determination that a territory was "conveniently located" and "of suitable size", his authority to "lay out" a central school district was limited only by the single restriction that the territory must be exclusive of a city school. There was no restriction that the territory laid out could not embrace an existing central school district.

For thirty years the section remained unchanged. Then in 1944 the Legislature dealt with it twice. By chapter 6 of the Laws of 1944, it modified the limitation by allowing the commissioner to lay out central school districts except in territory of a city school district having a population of more than 5,000. By chapter 637 of the Laws of 1944, the Legislature repealed

section 180 as it then existed and in its place enacted the following: "180. *Formation and changes of central school districts*. 1. The commissioner of education is hereby authorized and empowered to lay out central school districts for the establishment of central schools to give instruction in elementary or elementary and high school subjects and to fix, determine and define the boundaries of said districts as hereinafter provided. 2. The commissioner is authorized and empowered to make and enter in his office orders laying out territory in new central school districts or annexing to existing central school districts territory not heretofore incorporated in central school districts and not contained within a city school district in a city having a population of more than five thousand inhabitants. The commissioner in laying out such central school districts and in fixing and defining the boundaries thereof shall include only territory of suitable size conveniently located for the attendance of pupils and having a sufficient number of pupils for the establishment of a central school.''

By this law, the commissioner was given an added power — that of annexation of territory to central school districts — but to the already existing limitation on his power was added a further limitation. He had been denied the power to make orders affecting territory located within most cities and by the new law he was also denied the authority to make orders as to territory previously incorporated in central school districts. The words of restriction follow the grant of the power to annex but the Legislature surely intended the restrictions to apply not only to the annexation power but also to that of centralization. If this were not so, the commissioner would have had power to lay out central school districts in any city contrary to the whole purpose of central school districts, namely, to provide better educational facilities and advantages to pupils in the more sparsely populated sections of the State. Thus, the law authorized the commissioner " to make and enter in his office orders laying out territory in new central school districts * * * not heretofore incorporated in central school districts and not contained within a city school district in a city having a population of more than five thousand inhabitants.'' He was also empowered " to make and enter in his office orders * * * annexing to existing central school districts territory not heretofore incorporated in central school districts and not contained within a city school district in a city having a population of more than five thousand inhabitants.''

Subdivision 2 of section 180 again received legislative attention in 1947. Section 1 of chapter 859 of the laws of that year amended the subdivision to read, insofar as here pertinent, as follows: "The commissioner is authorized and empowered to make and enter in his office orders laying out territory in new central school districts or annexing to existing central school districts territory not contained within a city school district in a city having a population of more than five thousand inhabitants." The words "not heretofore incorporated in central districts and" which were inserted in the law in 1944 were deleted by this 1947 change. The evident purpose of this was to remove the restriction placed on the commissioner in 1944. No other purpose can reasonably be attributed to the Legislature. By the removal of the restriction, the commissioner regained authority to include in new central school districts an existing central school district. The word "new" as used in the phrase "new central school districts" in subdivision 2 is not used in the sense of excluding territory already included in central school districts. It is merely descriptive of an entity which previously did not exist.

By referring to section 2 of the same chapter (859) of the Laws of 1947 (which amended subdivision 2 of section 180 by omitting the words previously quoted), all doubt is removed that the Legislature intended to empower the commissioner to include an existing central school district in a new central school district. Section 2 amended the first paragraph of subdivision 1 of section 185 of the Education Law (now § 1806, subd. 1) to read, in part, as follows: "Whenever a new central school district shall be laid out and organized out of the territory of two or more existing central school districts, such new central school district shall be entitled to receive the same apportionments as it would have received had all the districts included in the two or more existing central school districts been originally laid out and organized as a central school district; provided, that the amount of the quotas for each school district included in the two or more existing central school districts shall be the amount as of the respective dates of the organization of each of the two or more existing central school districts."

Central school districts receive building quotas and other amounts of State aid because of their status as central school districts (Education Law, § 1806). Upon combining two central school districts, difficulty would be encountered in figuring amounts to which the district thus created would be entitled from the State. However, no problem exists where only one

existing central school district is combined with other territory into a new central school district. The statute just quoted was enacted in order to reduce the difficulty and uncertainty where two central school districts are combined. In doing so, the Legislature distinctly recognized that the commissioner has power to create a new central school district which includes existing central school districts.

From all of the foregoing, it is apparent that section 180 of the Education Law (now known as section 1801 and, insofar as here pertinent, set forth previously) authorizes the Commissioner of Education to lay out a new central school district which includes an existing central school district. The fact that the commissioner has the power to order Union Free School District No. 1 annexed to Central School District No. 1 does not detract from his power to order centralization of the two districts.

There is no merit to petitioners-respondents' claim that the order of the commissioner is arbitrary. Before the commissioner laid out Central School District No. 2, he had been petitioned to do so by approximately 550 qualified voters of Union Free School District No. 1. (Some idea of the proportion the number of signers bears to the whole number of voters may be gained by reading paragraph 23 of the petition which alleges that a registration of voters in Union Free School District No. 1 in 1954 produced 843 names.) A citizens' committee of the district unanimously voted in favor of the merger. No high school is maintained in Union Free School District No. 1. The " Master Plan for School District Reorganization " of the Joint Legislative Committee on the State Education System (N. Y. Legis. Doc., 1947, No. 25, pp. 21, 22) recommended a combination of most of the territory included in the commissioner's present order. In 1953, the Education Department conducted studies of the educational and financial needs of both Union Free School District No. 1 and Central School District No. 1 and concluded that it was feasible and desirable to combine both of them into one.

The order should be reversed and the petition dismissed, without costs.

FOSTER, P. J., BERGAN, COON and HALPERN, JJ., concur.

Order reversed and petition dismissed, without costs.